Norma E. **WILLIAMS**, Next Friend of Darrell Lee Williams, Robin Leigh Williams and Nancy Anne Williams, Minors, and Roy H. Williams, Individually and as Administrator of the Estate of Harvey Lee Williams, Deceased, Plaintiffs,

v.

**MIDLAND CONSTRUCTORS**, a Joint Venture of Hardaway Contracting Company, Oman Construction Company, Inc., R. P. Farnsworth & Co., Inc. and Wright Contracting Company, Defendants.

**INDUSTRIAL PAINTERS & SANDBLASTERS** and National Surety Corporation, Third-Party Defendants.

No. LR–63–C–37.

United States District Court
E. D. Arkansas, W. D.

Sept. 9, 1963.

Comer Boyett, Jr., of Yingling, Henry & Boyett, Searcy, Ark., for plaintiffs.

Robert S. Lindsey of Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for defendants.

L. B. Burrow, Jr., Little Rock, Ark., for Industrial Painters & Sandblasters, third party defendant.

A. L. Barber, Little Rock, Ark., for National Surety Corp., third party defendant.

HENLEY, Chief Judge.

■ This wrongful death action is now before the Court on motion of the third party defendants to dismiss the third party complaint on the ground that it fails to state a claim upon which relief can be granted. The motion has been submitted on the record in the case, including memorandum briefs filed in connection with the motion as provided by Local Rule 8 of this Court. In passing upon the motion all allegations of fact contained in the complaint and third party complaint are to be accepted as true.

■ On October 5, 1961, the deceased, Harvey Lee Williams, a painter, was fatally injured while at work at a missile base which was being constructed in White County, Arkansas, by the defendant joint venturers, doing business as Midland Constructors, and hereinafter called Midland, under a prime contract with the United States Government. The painting subcontract had been let by Midland to the third party defendant, Industrial Painters & Sandblasters, hereinafter Industrial, and the other third party defendant, National Surety Corporation, hereinafter National, was the surety on the subcontractor's performance bond. At the time of his death the deceased was an employee of Industrial.[1]

The prime contract between Midland and the Government required the former to take precautions to prevent accidents in the course of the work as prescribed by Corps of Engineers Manual EM 385–1–1, dated March 13, 1958, or as prescribed by the contracting officer. Midland was also required to have on the job a "subcontractor coordinator," whose duty it was to "coordinate, direct and expedite sub-contracted work."

The subcontract between Midland and Industrial contained a broad provision for indemnity running in favor of Midland, and Industrial's bond was conditioned not only that Industrial would perform the subcontracted work but also that it would discharge its indemnity obligations to Midland.

In the course of the work Midland excavated a pit or "silo" of a depth of 130 feet and overlaid this excavation with steel girders spaced some twenty feet apart. On October 5, 1961, deceased who was directed to paint these girders went upon them without having been furnished with any safety lifeline or safety net. In the course of his work he fell from one of the girders into the excavation and received injuries from which he died later in the day. This suit against Midland followed.

The action was commenced originally in the Circuit Court of White County, Arkansas, by the decedent's father, who was also the administrator of the decedent's estate, and by deceased's widow and children. Subsequently, the father as administrator was substituted as the sole plaintiff. Midland removed the case to this Court on the basis of diversity of citizenship, and thereafter filed its answer and its third party complaint against Industrial and National.

The complaint alleges in substance that the injuries to and death of Harvey Lee Williams were proximately caused by the negligence of Midland in failing to perform its obligations to take precautions against accidents, and in failing to prop-

---

[1] Presumably the deceased's widow and children were paid death benefits under the Arkansas Workmen's Compensation Law, and such benefits constituted the sole remedy for the death as far as Industrial's direct liability was concerned, and plaintiff seeks no relief against Industrial. However, the payment of such benefits would not absolve third parties from liability if they were otherwise liable.

erly supervise the operations of Industrial. More specifically, it is alleged that Midland negligently failed to provide decedent with proper safety appliances, negligently permitted him to work without such appliances, negligently placed the girders in such manner that it was impossible or impracticable to attach a safety lifeline to them, and negligently failed to supervise the painting operation of Industrial, including the work of deceased.

In its answer to the complaint Midland denies negligence, takes issue with plaintiff as to damages, and pleads contributory negligence of the deceased, assumption of risk, and unavoidable accident.

In its third party complaint Midland alleges that under the terms of the subcontract Industrial agreed to indemnify Midland and save it harmless "from any and all claims and liabilities of every nature whatsoever, which may be presented to, or asserted against (Midland) by virtue, or on account of (Industrial's) doing and performing, or failing to do and perform, the work contracted to be done and performed by (Industrial), including the expenses of defending suits on account of any such claims and/or liabilities." It is alleged that Industrial's bond was conditioned that Industrial would perform its obligations under the subcontract; that it would pay promptly all just claims for damages or injuries to persons or property arising in or about the work; and that it would indemnify Midland and save it harmless with respect to "all costs, expenses, damages, injuries or loss, including court costs, litigation expenses and attorney's fees, to which (Midland) may be subjected by reason of want of care or skill, negligence, omissions or default on the part of (Industrial) or its agents, servants, employees, or independent contractors in the execution or performance of the subcontract * * * and of the principal contract * * *."

It is further alleged that plaintiff's claim against Midland

"* * * constitutes a claim against (Midland) by virtue of or on account of the doing and performing of the work to be performed by (Industrial) under the subcontract; constitutes claims for injuries to a person arising in or about the performance of the work specified in the subcontract; and involves costs, expenses, damages, injuries, litigation expenses and attorney fees to which (Midland) is being subjected by reason of want of care or skill, negligence, omissions or default either on the part of (Industrial) or agents, servants, or employees of (Industrial), including want of care or skill, negligence, omissions or default on the part of Harvey Lee Williams."

The prayer of the third party complaint is for judgment over against Industrial and National for all sums that may be adjudged against Midland in favor of plaintiff, and that, in addition, Midland be awarded judgment against the third party defendants for the costs and expenses of this litigation, including a reasonable attorney's fee.

In support of their motion to dismiss the third party complaint the third party defendants take the position that the negligence alleged in the principal complaint is that of Midland and not that of Industrial; that Midland is seeking indemnity for its own negligence which, according to movants, is not legally permissible, and that, in any event, the subcontract and the subcontractor's bond do not purport to provide indemnity to Midland with respect to its own negligence.

■ Rule 14(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., insofar as here pertinent, provides that a defendant may file a third party complaint against "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." The Rule has obvious application to a defendant who seeks indemnity from a third person with respect to the claim asserted against the defendant in the principal complaint. And it is clear here that Midland is seeking such indemnity from Industrial and National. Thus,

from a procedural standpoint the third party complaint was properly filed.

 From a substantive standpoint the third party defendants are not entitled to have the third party complaint dismissed for failure to state a claim upon which relief can be granted unless it is clear that Midland is not entitled to *any* relief against them. The third party complaint should not be dismissed merely because it may appear or may develop that Midland is not entitled to as broad an indemnity as it seeks.

 A consideration of the record before it, which includes a copy of the subcontract, convinces the Court that when the third party complaint is characterized properly it states a claim for at least partial indemnity based upon negligence of Industrial in the performance of the subcontract, and that the motion to dismiss must be denied. It is unnecessary at this stage for the Court to determine whether the subcontract and the bond purport to afford Midland indemnity for its own negligence and, if so, whether such an agreement is valid. See in this connection Anthony v. Louisiana & Arkansas Railway Co., 8 Cir., 316 F.2d 858, affirming Louisiana & Arkansas Railway Co. v. Anthony, W.D.Ark., 199 F.Supp. 286.

The subcontract, among other things, incorporated by reference all relevant provisions of the prime contract, which would include the primary obligation of Midland to take the required precautions to prevent accidental injuries. In other words, Midland delegated to Industrial to the extent of the subcontract its duties with respect to safety of operations. The prime contract did not prohibit such a delegation, as between Midland and Industrial, although it did provide that Midland would remain responsible for safety precautions taken in connection with subcontracted work.

It may be assumed that as far as decedent was concerned Midland's duties to take precautions for his safety were nondelegable; but as between Midland and Industrial the duties were delegable, and the actual and immediate failure to furnish decedent with proper safety appliances was the failure of Industrial, and if such failure constituted negligence, the negligence was that of Industrial. That such negligence might give rise to a direct claim against Midland on behalf of an injured or deceased workman does not change the fact that the actual breach of duty was committed by Industrial.

 It is true that the complaint alleges that Midland negligently so constructed the girders that a lifeline could not be attached to them, and that it negligently failed to supervise the painting operation properly, and it may be assumed that those allegations charge Midland with independent negligence. But, all that this amounts to is a charge that decedent came to his death as a result of the joint and concurrent negligence of the prime contractor and of the subcontractor, and under Arkansas law an indemnitee under an express contract of indemnity does not lose all of his right to indemnity with respect to liability imposed by reason of the negligence of the indemnitor merely because the indemnitee's own negligence contributed to the injury. C. & L. Rural Electric Cooperative Corporation v. Kincaid, 221 Ark. 450, 256 S.W.2d 337; Kincade v. C. & L. Rural Electric Cooperative Corporation, 227 Ark. 321, 299 S.W.2d 67.

In Kincaid, supra, an employee of a contractor was injured by reason of the joint and concurrent negligence of the contractor, Delta Construction Co., and the contractee, C. & L. Rural Electric Cooperative Corporation. The employee, one McEntire, recovered judgment against C. & L. which C. & L. and its liability insurance carriers discharged in full. The contract between Delta and C. & L. provided that Delta would indemnify C. & L. and save it harmless with respect to any liability arising in the course of the performance of the contract. C. & L. and its insurers filed a suit for indemnity against Delta in Circuit Court. That Court sustained a demurrer to the complaint, and C. & L. appealed The Supreme Court of Arkansas

**404**

reversed the Circuit Court and held that C. & L. and its insurers were entitled to indemnity to the extent that the injuries of McEntire had been caused by the negligence of Delta, 221 Ark. 450, 256 S.W. 2d 337. It was said (p. 458 of 221 Ark., p. 341 of 256 S.W.2d): "We must point out that the extent of Delta's liability to C & L on Delta's indemnity contract with C & L would be measured by or dependent upon, its degree of negligence, if any, in contributing to McEntire's injury and prorated accordingly." The case was remanded for trial on the merits. As a result of such trial a jury found that the causal negligence responsible for McEntire's injury should be apportioned 60 percent to Delta and 40 percent to C. & L., and the Circuit Court gave C. & L. and its insurers judgment for 60 percent of McEntire's original judgment against C. & L. That judgment was affirmed by the Supreme Court of Arkansas but with a modification which allowed the indemnitee interest on the sum recovered, 227 Ark. 321, 299 S.W.2d 67.

An order denying the motion and directing the third party defendants to answer the third party complaint will be entered.