IN THE SUPREME COURT OF MISSISSIPPI
NO. 1999-CA-00107-SCT

*RALPH DOUGLAS SENNETT, BRENDA H. SENNETT AND BROOKSVILLE TEXACO SERVICE CENTER a/k/a BROOKSVILLE TEXACO SERVICE CENTER, INC.*

*v.*

*UNITED STATES FIDELITY AND GUARANTY COMPANY AND FIDELITY GUARANTY AND INSURANCE UNDERWRITERS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/1999 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KENNETH M. BURNS |
| ATTORNEYS FOR APPELLEES: | DEWITT T. HICKS, JR. |
| | P. NELSON SMITH |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 03/09/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/30/2000 |

## BEFORE PITTMAN AND BANKS, P.JJ., AND COBB, J.

## COBB, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. On June 12, 1996, Nancy Chance filed a wrongful death action in the Noxubee County Circuit Court against Ralph Douglas Sennett and Brenda H. Sennett, individually, Brooksville Texaco Center a/k/a Brooksville Texaco Service Center, Inc., and Texaco, Inc. Chance's complaint alleged that her brother, John Darren Shelton, was killed while on duty as an employee at Brooksville Texaco and demanded judgment against the defendants in the sum of one million dollars.

¶2. On April 16, 1998, the Sennetts filed a third-party complaint in that action pursuant to Rule 14, Mississippi Rules of Civil Procedure, against United States Fidelity and Guaranty Company (USF&G) and Fidelity Guaranty and Insurance Underwriters, Inc. (Fidelity), stating that these insurance companies had refused to provide defense and indemnification, although the Sennetts had in effect commercial general liability insurance policies to cover their business establishments, including the Brooksville Texaco Service Center at which Shelton was killed.

¶3. USF&G and Fidelity then filed a motion to dismiss the third-party complaint, claiming that the plain language of the policies "preclude[s] any direct action against [them]" and that "established law in

Mississippi precludes the joinder of an insurer in a tort suit...." The Sennetts and Brooksville Texaco filed a response to the motion to dismiss, citing the comment to Rule 14, which mentions specifically the use of Rule 14 by a defendant to "implead his liability insurer if the insurer is disclaiming liability on the policy," to which a rebuttal was filed by USF&G and Fidelity. Circuit Court Judge John M. Montgomery conducted a hearing on the motion to dismiss and at the close of arguments requested that each side submit findings of fact and conclusions of law in support of its position. The court entered Findings of Fact and Conclusions of Law on December 1, 1998, granting dismissal of the third-party complaint filed against USF&G and Fidelity, with prejudice. A final judgment expressly determining "no just reason for delay" and directing the entry of judgment as required by Rule 54(b), was entered on January 5, 1999.

¶4. Aggrieved by the court's decision, the Sennetts and Brooksville Texaco filed a timely appeal to this Court. We affirm the judgment of the trial court.

## STATEMENT OF THE FACTS

¶5. Nancy Chance brought her wrongful death action after her brother, John Darren Shelton, was shot and killed by an off-duty employee while Shelton was working as an employee at a convenience store known as Brooksville Texaco. The loaded .22 caliber handgun used to kill Shelton was kept behind the counter at the convenience store, ostensibly to provide protection for employees, and was put there by Ralph Sennett. After being sued by Chance, the Sennetts, believing that the commercial general liability insurance policy which they purchased for Brooksville Service Center and Truck Stop, Inc. should cover this action, requested assistance from USF&G and Fidelity in defending against Chance's suit. Upon being advised by the insurers that the plain language of the policy excluded injury and death of an on-duty employee from coverage and that the insurers would not defend and indemnify against the wrongful death action, the Sennetts filed a third-party complaint pursuant to Rule 14, Mississippi Rules of Civil Procedure, against USF&G and Fidelity. The complaint was filed only in the names of Ralph D. and Brenda H. Sennett and did not mention the Brooksville Texaco Service Center at all. It simply alleged that USF&G and Fidelity were required to provide defense and indemnification under the terms of "an insurance policy"; that Fidelity and USF&G should be liable for any judgment rendered against Sennetts; and that USF&G and Fidelity had refused to provide a defense and indemnification. No policy of insurance was attached to this complaint. USF&G and Fidelity filed their Motion to Dismiss, attaching copies of insurance policy number 1MP30101814600, issued to named insured Brooksville Service Center and Truck Stop, Inc. for the convenience store, and a second policy, number 1MP3003978561, virtually identical to the other, which did not include a declaration page but apparently was for another business of the Sennetts. Following argument, the trial court granted USF&G's and Fidelity's motion to dismiss the third party complaint, and a final judgment was entered on January 5, 1999.

## ISSUE ON APPEAL

**DID THE TRIAL JUDGE ERR IN DISMISSING THE THIRD PARTY COMPLAINT OF THE DEFENDANTS/THIRD PARTY PLAINTIFFS?**

## STANDARD OF REVIEW

¶6. A motion to dismiss for failure to state a claim under Mississippi Rule of Civil Procedure 12(b)(6) raises an issue of law. *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990); *Lester Eng'g Co. v. Richland Water & Sewer Dist.*, 504 So. 2d 1185, 1187 (Miss. 1987). This Court reviews questions of

law de novo. *Mississippi Transp. Comm'n v. Fires*, 693 So. 2d 917, 920 (Miss. 1987). When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Butler v. Board of Supervisors*, 659 So. 2d 578, 581 (Miss. 1995).

## ANALYSIS

¶7. The Sennetts, in challenging the trial court's judgment, assert that the trial court, by considering the underlying commercial general liability insurance policy, looked outside the pleadings. They further allege that the trial court treated the motion to dismiss as a motion for summary judgment without allowing the development of proof through discovery as the summary judgment rule requires. See Miss. R. Civ. P. 56.

¶8. In the case below, the trial court considered the Sennetts' complaint as well as the policies attached to the USF&G / Fidelity motion to dismiss, and determined that the policies were clear, plain, and unambiguous. Based on this determination, USF&G and Fidelity were dismissed with prejudice.

¶9. Although many federal courts of appeals have approved consideration of documents that are attached to a defendant's motion to dismiss under Rule 12(b)(6), without the necessity of converting the motion to a summary judgment[1], it appears that this Court has not previously done so. In *Baldwin v. Laurel Ford Lincoln-Mercury, Inc*., 32 F. Supp. 2d 894, 898 (S.D. Miss. 1998), a case in which the claim was based on a retail installment contract, the federal district court held that "[i]n attacking the pleadings, Ford Credit may introduce the document without converting it to a motion for summary judgment", citing *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 595-96 (E.D. Tex. 1994) and 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 762-63 (2d ed. 1990) ("[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.") "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."*Sheppard* at 595-96.

¶10. "A major factor directing courts to look only towards the pleadings in deciding a 12(b)(6) motion is the concern that statements outside of the complaint will not provide adequate notice to a plaintiff. However, '[w]here plaintiff has actual notice of all of the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991).

¶11. The Sennetts' third- party complaint against USF&G and Fidelity falls squarely within this application of the exception. "Here, the exhibit relied upon was specifically referred to in Plaintiff's complaint. Furthermore, this document is central and necessary to Plaintiff's cause of action [ ]." *Sheppard* at 596. "Additionally, Defendant tendered the entire document . . . and this document directly refutes the complaint's assertions. Therefore, this court considers Plaintiff's complaint and Defendant's Exhibit I in determining whether Plaintiff's complaint states a claim upon which relief may be granted." *Id.*

¶12. The Sennetts urge that even if it was proper to consider the policies, there is ambiguity surrounding "who is the insured" in regard to the liability of Mr. Sennett for negligence, and in regard to the fact that there are two policies with different insureds.

¶13. At the time of Shelton's death, Brooksville Texaco Center a/k/a Brooksville Texaco Service Center,

Inc., had in effect an insurance policy for commercial general liability coverage with Fidelity policy number 1MP30101814600. This policy was for the convenience store where the fatal shooting occurred. There also existed a commercial insurance policy with USF&G, policy number 1MP3003978561, covering the Brooksville Texaco Service Center, Inc. for the auto parts and repair facility, which the trial judge correctly found did not apply.[(2)]

¶14. The key provisions of the policies read as follows:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

. . . .

2. Exclusions.

*This insurance does not apply to: . . . .*

d. Any obligation of the insured under a worker's compensation, disability benefits or unemployment compensation law or any similar law.

e. *"Bodily injury" to:*

(1)*An employee of the insured arising out of and in the course of employment by the insured; or*

(2)The spouse, child, parent, brother or *sister of that employee as a consequence of (1) above.*

*This exclusion applies:*

(1)Whether the insured may be liable as an employer or in any other capacity; and

(2)*To any obligation to* share damages with or repay *someone else who must pay damages because of the injury.*

. . . .

COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

. . . .

2. Exclusions.

*We will not pay expenses for "bodily injury:"*

a. *To any insured.*

b. *To a person hired to do work for or on behalf of any insured. . . .*

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses, are also insureds, but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

*However, no employee is an insured for:*

(1)*"Bodily injury"* or "personal injury" to you or *to a co-employee while in the course of his or her employment, ... or sister of that employee as a consequence of such "bodily injury"* ... or for the obligation to ... repay someone else who must pay damages because of the injury:

. . . .

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit"asking for damages from an insured; or

b. To sue us on this Coverage unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; *but we will not be liable for damages that are not payable under the terms of* this *Coverage Part.*

. . . .

SECTION V - DEFINITIONS

. . . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including *death* resulting from any of these at any time.

. . . .

(emphasis added).

¶15. After careful review of the policy, we agree with the trial court that the relevant terms are clear, plain, and unambiguous. Section I, paragraph 2(e) states that the policy does not apply to (1) "bodily injury" to an "employee of the insured arising out of and in the course of employment by the insured. . . ." Paragraph 5 defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Section II, paragraph 1 defines "who is an insured" in pertinent part[3]: "If you are designated in the Declarations as: (b) A partnership or joint venture, you are an insured. Your members, your partners, and their spouses, are also insureds, but only with respect to the conduct of your business or (c) an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officer or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders". Paragraph 2 (a) provides that employees are insureds only for acts within the scope of their employment. However, 2(a)(1) states that no employee is an insured for " '[b]odily injury' or 'personal injury' to you or to a co-employee while in the course of his or her employment, or the spouse, . . . brother or sister of that co-employee as a consequence of such 'bodily injury' [ ]."

¶16. "It is clear that the relationship between an insurance company and its insured is contractual in nature, with the rights and duties set out by the provisions of the insurance policy. Like all other contracts, insurance policies which are clear and unambiguous are to be enforced according to their terms as written. Thus, the plain terms of the insurance contract should be binding and controlling." *Hare v. State*, 733 So.2d 277, 281 (Miss. 1999).

¶17. Although the Sennetts' complaint refers to several provisions of the insurance policy, it fails to allege any facts to demonstrate that the situation qualified for policy coverage.

¶18. "The liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy; it clearly has no duty to defend a claim outside the coverage of the policy." *Moeller v. American Guar. & Liability Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).

¶19. "Whether a liability insurance company has a duty to defend depends upon the language of the policy. 'The traditional test' for whether an insurer has a duty to defend under the policy language' is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration [in the

underlying action.].*'" *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997).

¶20. Policies of commercial general liability insurance generally exclude injuries to some, if not all, employees from coverage. 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3$^d$ § 129: 3 at 129-9 (1997).

> The exclusion of employees is accomplished in two ways_ 1 Exempting from coverage any obligation of the insured arising under workers' compensation . . . and 2 Excluding from personal injury protection any injury to an employee which arises out of the course of employment by the insured or the performance of duties relating to the conduct of the insured's business.

*Id.* at 129-9. The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public. *Id.*

¶21. The employee exclusion in commercial general liability policy no. 1MP 30101814600 is drawn in such fashion, and thus, the trial court rightfully found that the plain meaning of this common form of coverage precludes defense or indemnification.

¶22. The Sennetts correctly state that Rule 14 provides in the Comments, " a defendant may implead his liability insurer if the insurer is disclaiming liability on the policy." Miss. R. Civ. P.14 (a) cmt. However, they falter in their apparent conclusion that because Rule 14 impleader is permissible, that alone is sufficient to keep USF&G and Fidelity in the suit and to deny the motion to dismiss. Consistent with Miss. R. Civ. P.12, to survive a motion to dismiss filed by the third-party defendants, the complaint must state a valid claim upon which relief may be granted. *Id.* The Sennetts' claim did not. USF&G and Fidelity do not owe a duty to defend or indemnify the insured for tortious acts of an employee against a co-employee who was fatally injured in the course of his employment. Therefore, they may not be made liable, nor be made a party to the action. Dismissal is necessary, as there are no alleged facts which could sustain the action.

¶23. In *Weyerhaeuser Co. v. Wells,* 593 So. 2d 1010 (Miss. 1992), this Court relied on Rule 14 in affirming the lower court's refusal to allow a third-party claim against an employer for indemnity. In *Weyerhaeuser* this Court stated, "[t]he rule. . . provides. . . that impleader should be permitted only for 'good cause.' . . . [T]he court has discretion to disallow a claim even if it meets the technical requirements of the rule. As the cases interpreting the federal rule state, the court should exercise its discretion in light of the policies underlying the rule." *Id.* at 1012, (quoting Miss. R. Civ. P. 14 cmt.). The Court in *Weyerhaeuser* also stated "[I]t is apparent that the rule does not grant a defendant a right to have a third party claim heard by the court in the same action. The Mississippi trial courts have greater discretion on Rule 14 than the federal courts have. . . ." *Id.*

¶24. "In exercising its discretion the court should endeavor to effectuate the purpose of Rule 14, which means that impleader is to be allowed if it will avoid circuity of action and eliminate duplication of suits based on closely related matters." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1443, at 300 (1990) (footnotes omitted). "As a result, a timely application for impleader should be granted **except when** it will delay or disadvantage the existing action **and the third-party claim obviously lacks merit.**"*Id.* at 300-01 (emphasis added & footnote omitted). The trial court correctly determined that the Sennetts' complaint lacked merit because the language of the policies prevented a successful claim for defense and indemnity. Therefore, dismissal was proper.

¶25. Rule 14(a) authorizes a defendant to bring into a lawsuit **any person** "not a party to the action who is or **may be liable** to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Miss. R. Civ. P. 14(a) (emphasis added). The Sennetts urge that as insurers of Texaco Service Center, USF&G and Fidelity **may be liable** for defense and indemnification of the plaintiff's negligence claim against the Sennetts. The trial court properly determined that USF&G and Fidelity **are not** liable under the terms of the policy before the court.

¶26. Although the defendant may implead a liability insurer if the insurer is disclaiming liability, the defendant may not implead the insurer if the Court determines that the insurer, pursuant to the policy terms, **is not liable.** As an Arkansas federal district court instructed, "a third-party complaint should not be dismissed merely because it may appear or develop that [the third-party plaintiff] was not entitled to as broad an indemnity as it seeks." *Williams v. Midland Constructors* 221 F. Supp. 400, 403 (E.D. Ark. 1963). However, this was not the situation with which the trial court below was faced. In the case below, there was not an issue about the degree of indemnity. As evidenced by the policy language, no duty to defend nor to indemnify existed.

¶27. The trial judge, in his Findings of Fact and Conclusions of Law, stated that the better practice in this situation would have been to file a separate declaratory action outside the wrongful death lawsuit, to determine the applicability of the policy or policies at issue. However, the Sennetts chose instead to bring the Rule 14 impleader action, requiring resolution by the trial court. Based on the record before us, we find no error in its decision.

## CONCLUSION

¶28. In dismissing the third-party complaint, the court properly considered the commercial general liability policy for the convenience store which clearly excluded coverage here. This precludes any duty on the part of USF&G or Fidelity to defend or indemnify the Sennetts and Brooksville Texaco Service Center, Inc. We affirm the judgment of the Noxubee County Circuit Court.

¶29. **AFFIRMED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

> **McRAE, JUSTICE, DISSENTING:**

¶30. The majority asserts today that "In the case below, the trial court considered the Sennetts' complaint and the policies attached to the USF&G / Fidelity motion to dismiss, and determined that the policies were clear, plain, and unambiguous." (Maj. Op. at 5). What the majority fails to resolve is the fact that while Fidelity attached its policy (Exhibit 1) with the answer, a closer inspection reveals that Sennetts are not named insureds (only Texaco Service Center, Inc.) and certain exclusions and endorsements are not attached to the policy, thus making it incomplete and not applicable to the Sennetts. This Court also fails to recognize the fact that at oral argument on this matter the lower court was informed that there was an additional policy covering Brooksville Texaco Center as an individual that was never considered by the court. In reviewing the policy attached to Fidelity's motion to dismiss, the trial judge erred in considering matters outside the pleadings, contrary to Miss. R. Civ. P. Rule 12(b)(6) and without allowing any further

discovery and development of proof as required under both Rule 12(b) and 56. The motion to dismiss should not have been granted without allowing further discovery. This case should be sent back for further discovery, particularly consisting of any and all policies which may pertain to the incident. Accordingly, I dissent.

¶31. The trial court and the majority appear to be overachievers, going beyond what the motion sets as actual issues. The two main issues are whether a direct action should be allowed and whether joinder of an insurance company in a tort action is allowed under Rule 14.

¶32. This is not a direct action claim against the insurers by an injured plaintiff. It is simply a third-party claim by defendant putative insureds against their insurers to determine if coverage is in fact available. The trial court was in error in holding that Rule 14 joinder was impermissible in this case because of the additional ground of the prohibition against direct action. Insurance coverage being initially decided, then the tort claim can proceed without insurance being mentioned at trial as the issue of coverage is only ancillary to the tort claim.

¶33. Rule 14 allows for insurance companies to be brought into a tort claim where coverage is denied. Direct actions by a tort victim against a tortfeasor's insurance company are expressly provided for in Rule 14:

> After commencement of the action and upon being so authorized by the court in which the action is pending on motion and for good cause shown, a defending party may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

Miss. R. Civ. P. 14(a).

¶34. The comments to the rule make clear that a third-party claim must be derivative and that such a claim exists when a right of indemnity is sought:

> The requirement that the third-party complaint be for derivative or secondary liability may be met by, **for example, an allegation of a right of indemnity (contractual or otherwise)**, contribution, subrogation, or warranty.

*Id*. cmt. (emphasis added).

¶35. It is also made clear that Rule 14 is designed to prevent an insured from having to defend a case, receive a judgment against him, and then sue his insurance company for refusing to defend and indemnify him. "Similarly, a defendant may implead his liability insurer if the insurer is disclaiming liability on the policy." Id. As there is no dispute that the third-party defendants disclaimed liability, they may be impleaded under Rule 14. The Mississippi Rules of Civil Procedure and Mississippi precedent provide for this. There is no reason to look to other jurisdictions for law when there is sufficient precedent within our own state. *See **Lewis v. Allstate Ins. Co.**, 730 So.2d 65, 71 (Miss. 1998)*:

> We take this opportunity to state that if an insurance company can conduct a declaratory action regarding coverage prior to resolution of an underlying wrongful death trial, then the insureds and third party beneficiaries should be able to raise the coverage question in the underlying lawsuit as well. Pursuant to our rules of civil procedure, a hearing to determine coverage may be conducted if

necessary. *See* Miss. R. Civ. P. 57 cmt. (recognizing that a plaintiff may ask for a declaratory judgment either as his sole relief or in addition or auxiliary to other relief). Such reviews of insurance contracts do not involve the jury and are often cursory. **Accordingly, if a question of insurance coverage exists, a party should be able to bring the insurer into a lawsuit and have the coverage question resolved by the judge**.

(emphasis added).

¶36. The majority goes outside its own authority to change positions and allow the document of the defendant to be used on a Rule 12(b)(6) motion rather than converting it into a motion for summary judgment. The purpose of a motion to dismiss is to test the legal sufficiency of the complaint *T.M. v. Noblitt*, 650 So.2d 1340, 1345 (Miss.1995). The court's inquiry is essentially limited to the content of the complaint. *Id.* at 1346, (citing *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir.1986)). "A summary judgment motion is the same as a 12(b)(6) motion, it just occurs at a subsequent stage in the proceedings." *T.M.*, 650 So.2d at 1346.. Once a dismissal is granted under Rule 12(b)(6), the parties shall be given thirty days to amend. Miss. R. Civ. P. 12(b) & 15(a).

¶37. It is problematic that a document attached to the defendant's response to a 12(b)(6) motion to dismiss was considered when one of the documents clearly shows that the insured is a corporation, not a partnership and the other document doesn't contain a declaration sheet. In fact, from the record it cannot be determined who the name insureds are. In analyzing the documents in this case, the majority takes large leaps to assume that the decedent actually worked for the partnership, even though the policy says that it is a corporation.

¶38. A consideration not undertaken is whether the decedent was an employee of the Sennetts, individually, the partnership or the corporation. It must also be determined if workers compensation is applicable, bringing into play exclusion (d) in the policy. Mr. Sennett was the one that placed the gun in the store. Did he work for the corporation, the partnership or was he a mere shareholder? Obviously the person that shot the decedent was off duty and as a result, not working within the course of his employment at the time of the killing.

¶39. In defining "insured" on page ten, the policy states "If you are designated in the declaration as. . . ." On the policy that contains a declaration, the Sennetts are not listed individually or as a partnership by Fidelity. The other policy does not even contain a declaration sheet.

¶40. At the very least, the terms of the policy are not clear. This Court has long held, "[t]he language of an insurance policy will be deemed ambiguous if it is reasonably subject to more than one interpretation." *Universal Underwriters Ins. Co. v. Ford*, 734 So. 2d 173, 176 (Miss. 1999). This Court has further held "[w]here there is doubt as to the meaning of an insurance contract, it is universally construed most strongly against the insurer, and in favor of the insured and a finding of coverage." *Id.*

¶41. For whatever reasons, not all policies were submitted to the court. The only policies filed were not complete and did not encompass the acts of the Sennetts. The trial judge made his decision without a full set of facts before him and in essence granted a Rule 56 motion, labeled a motion to dismiss, without allowing the development of Rule 56 proof by both sides. If the decision was in fact a summary judgment, then the trial judge was in error to make a decision without the full set of facts before him, and the majority errs in affirming and thus condoning such conduct. To grant a motion under Rule 12(b)(6) it must appear to a

certainty that the plaintiff is entitled to no relief under any set of facts that **could be proved** in support of the claim. Miss. R. Civ. P. 12, cmt. (emphasis added). Surely, such a finding here is wrong. Analyzed under either rule, this case should be sent back for the development of further proof. I would reverse for the two reasons stated above and remand for further proceedings consistent with our rules of procedure and the precedent set forth in **this** state. Accordingly, I dissent.

1. See ***Branch v. Tunnell***, 14 F.3d 449, 453-54 (9th Cir. 1994); ***Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,*** 998 F.2d 1192, 1196 (3rd Cir. 1993);***Venture Assocs.Corp. v. Zenith Data Sys. Corp.***, 987 F.2d 429, 431 (7th Cir. 1993); ***Field v. Trump***, 850 F.2d 938, 949 (2d Cir. 1988). *See generally* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 1327, at 762-63 (1990).

2. Even if the other policy had been found to be applicable, it contains the same exclusions and language as policy number 1MP30101814600.

3. Although the original complaint states that Brooksville Service Center and Truck Stop, Inc. "is a partnership, in which Mr. and Mrs. Sennett are partners" (which is uncontroverted in the pleadings) and the declaration page of the insurance policy indicates that it is a corporation, this distinction is not critical here, due to the fact that the definition of "Who is an Insured" infra, would include the business entity and the Sennetts regardless of which business entity it was. It is the provision excluding coverage for "bodily injury [including death] to an employee of the insured" portion of the policy or policies which controls.