McMILLIN, C.J.,
for the Court:
¶ 1. The case now before the Court involves a dispute over legal title to two fire trucks now in the possession of Bolivar County. The appellant, Waters Truck and Tractor Company, Inc. (hereafter “Waters”), contends that it is the legal owner of the vehicles based on the fact that it holds the manufacturer’s statement of origin on the vehicles, without which formal title to the vehicles may not be transferred. Bolivar County, on the other hand, contends that it purchased the vehicles in the ordinary course of business from Gateo Fire Apparatus Co., Inc. (hereafter “Gateo”), a company in the business of converting generic truck chassis into fully-equipped fire trucks. There is, in *685 addition, a separate but related issue in the appeal involving a dispute between Bolivar County and Genesis Indemnity Insurance Company (hereafter “Genesis”) as to whether the claim asserted by Waters was a covered claim under, a general liability policy issued to Bolivar County by Genesis, thereby requiring Genesis to provide a defense to the claim.
¶ 2. The trial court granted summary judgment in favor of Bolivar County as to both aspects of the case and both Waters and Genesis have appealed. For reasons we will proceed to set out, we affirm both aspects of the judgment of the trial court.
I.
Facts
A. The Dispute Between Waters and Bolivar County
¶ 3. Bolivar County solicited bids to purchase several fire trucks for use in the county. Gateo was the successful bidder for three such trucks and an appropriate bid award was made. Gateo was not a dealer for a truck manufacturer. Rather, its customary business practice was to procure a generic truck chassis from an authorized truck dealer and convert the chassis to a fire truck by making appropriate modifications and adding the necessary equipment. In the matter now before this Court, Waters acted as the supplier of the truck chassis to Gateo for all three trucks. The evidence is undisputed that it was customary practice between Gateo and Waters that Gateo would not be required to pay for any chassis until such time as it had completed the conversion, delivered the truck to the purchasing customer, and received payment. Until Waters received payment, it was its practice to retain the manufacturer’s statement of origin of the chassis, which is the document required to obtain a Mississippi certificate of title for a new, previously untitled vehicle.
¶ 4. The first truck was completed by Gateo and delivered to the County. The County issued payment to Gateo and Gat-eo, in turn, paid Waters for the chassis, all without incident. The remaining two trucks were similarly completed and delivered to Bolivar County and, as in the earlier case, Bolivar County issued payment in full under the terms of its bid contract to Gateo. However, Gateo did not, as it had in the past, make payment out of those proceeds to Waters for the two chassis. Instead, the money was used by Gateo for some other purpose, and Gat-eo ultimately wound up in a bankruptcy proceeding, leaving Waters with little or no hope of recovery of the price of the two chassis from Gateo.
¶ 5. At that point, Waters commenced this action against Bolivar County, alleging that Waters, rather than Bolivar County, held the legal title to the two truck chassis. The suit sought, in the alternative, to require Bolivar County to pay the established purchase price for the two chassis or return them to the possession of Waters. Bolivar County defended on the ground that it was a good faith purchaser for value in the ordinary course of business and, thus, had ownership rights in the two chassis that were superior to those asserted by Waters.
B. The Dispute Between Genesis and Bolivar County
¶ 6. Bolivar County made demand on Genesis, its general liability insurance carrier, to defend the suit. The company declined coverage based on an exclusion in the policy for breach of contract actions. As a result, Bolivar County was forced to provide the costs of defending the claim asserted by Waters. Although the County prevailed in the lower court and contends that it should prevail in this appeal as to *686 the Waters matter on the merits, it nevertheless contends that Genesis should be required to pay the costs of defending the action brought by Waters.
II.
Discussion of the Waters Claim
¶7. Summary judgment is appropriate in those instances where there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. Robinson v. Cobb, 763 So.2d 883 (¶ 20) (Miss.2000); M.R.C.P. 56(c). In this case, the critical issues urged by Waters to establish its claim of ownership of the truck chassis are not disputed. It is undisputed that Waters did not deliver the manufacturer’s statement of origin of the vehicles to Gateo at the time the chassis themselves were delivered and there can be no dispute that such documents are essential under Mississippi law to obtain a valid certificate of title to the vehicles. Despite its failure to demand delivery of this critical document at the time it paid for the trucks, Bolivar County contends that it now has good title to the vehicles by virtue of the fact that, under the Uniform Commercial Code as enacted in this State, Gateo had equal authority with Waters to convey legal title to the chassis. Specifically, Bolivar County relies upon Section 75-2^403(2) of the Mississippi Code of 1972, which provides as follows:
Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business.
Miss.Code Ann. § 75-2-403(2) (1972).
¶ 8. Gateo, having had a long history of modifying stock truck chassis into specialized fire engines was, in our view, a merchant dealing in goods of that type within the meaning of the statute. Waters was certainly aware of this since it had done business with Gateo on a number of occasions under circumstances similar to those encountered in this case. Waters was also aware of the fact that Gateo had entered into a binding contract with Bolivar County to deliver three fire trucks at the time Waters agreed to deliver into Gatco’s possession the necessary three chassis that would permit Gateo to accomplish its contractual objective. We find that this delivery of possession of the chassis without any formal attempt on the part of Waters to limit Gatco’s authority to complete the fire trucks and deliver them to the County was an “entrusting of possession” of the chassis within the statute’s meaning. Thus, so long as Bolivar County was unaware of any legal impediment to Gatco’s authority to deliver the completed fire trucks to the County under the terms of the bid contract, then Gateo had the power to transfer all of Waters’s rights in the chassis to the County. Upon delivery of the completed fire trucks and receipt of the agreed purchase price, that transfer became a completed legal transaction, binding equally on Waters as it was on Gateo.
¶ 9. The sole possible area of dispute involves Waters’s assertion that Bolivar County was aware that Waters was retaining the manufacturer’s statement of origin pending receipt of payment in full for the chassis and that this fact constituted notice that Gatco’s ability to convey title to the two chassis was not absolute and that the County’s failure to insist upon delivery of the title documents takes the transaction out of the ordinary course of business. In a case bearing striking similarities to the case now before us, the Mississippi Supreme Court dealt with a case where a school district bought a bus from a company that specialized in converting stock truck chassis into school bus *687 es. Atwood Chevrolet-Olds, Inc. v. Aberdeen Municipal School District, 431 So.2d 926 (Miss.1983). The customizing company delivered the bus and was paid in full but failed to pay Atwood, which had furnished the chassis. Despite the fact that the documents of title were not contemporaneously delivered to the school district and were, in fact, still retained by Atwood pending receipt of payment from the customizing company, the supreme court held that the delivery of the chassis was an act of entrustment and that the delivery to the school district and payment of the purchase price completed the sale. Id. at 927-28. The court, specifically noting that the parties had an extensive history of doing business in that manner, held that the dealer’s delivery of the chassis with full knowledge that it was to be converted to a school bus and sold was an act of entrustment to a merchant under Section 75-2-403(2) and that the school district was a buyer in the ordinary course of business. Id.
¶ 10. The sole possible distinction in Atwood is that, in Atwood, there was a finding that “there was no notice to the Aberdeen School District of [the dealer]’s interest in the chassis” (Id. at 927); whereas, in our case there is a contention that Bolivar County understood that Waters was retaining the documents of title pending receipt of payment. We find that difference not to be significant enough to produce a different result. Section 75-1-201(9) of the Mississippi Code defines a buyer in the ordinary course of business as a “person who in good faith and without knowledge that the sale to him is in violation of the ownership rights ... of a third party in the goods buys in the ordinary course from a person in the business of selling goods of that kind.... ” Miss.Code Ann. § 75-1-201(9) (Supp.2000). The bare act of retaining the documentary evidence of title was, in our view, insufficient to put Bolivar County on notice that, if it consummated the sale with Gateo in essentially the same manner in which it had done on more than one occasion in the past, the transfer would violate Waters’s ownership rights. By entrusting the vehicle to Gateo under the circumstances — circumstances that were well known to Waters — Waters cloaked Gateo with the authority to convey whatever rights Waters had in the truck.
¶ 11. The judgment in favor of Bolivar County on this aspect of the case must be affirmed.
III.
Discussion of Insurance Coverage
¶ 12. Bolivar County- had, prior to this incident, purchased a general liability insurance policy from Genesis. The terms of the policy provided coverage for “wrongful acts” of county officials, defined as including errors, misstatements, neglect, or breach of duty including misfeasance, malfeasance, and nonfeasance in the discharge of official duties. When called upon to defend the claim asserted by Waters, Genesis declined to do so, citing an exclusion in the policy for claims based on allegations of wilful or negligent breach of contract.
¶ 13. Genesis argued that the gravamen of this action sounds in contract in that the allegations of the complaint are essentially that Bolivar County paid the wrong entity for the fire trucks under a contract of purchase and, but for that improper payment, there would be no claim.
¶ 14. That argument is without merit. Waters was not a party to the contract of purchase of the fire trucks, which was solely between Bolivar County and Gateo. Insofar as the terms of that contract are concerned, there is no contention that Bolivar County did anything oth *688 er than perform according to the letter. Waters’s complaint, on its face, advances a claim sounding in common law conversion. It cites to no provision in the contract between Bolivar County, and Gateo that obligated Bolivar County to pay separately the cost of the chassis. The amount demanded in the complaint finds no basis in the provisions of the contract, but rather is Waters’s assertion of the value of the two chassis, as evidenced by the fact that Waters pleads in the alternative for payment of the value of the goods or the return of the property itself — the classic two alternative forms of relief afforded in conversion claims.
¶ 15. The existence of coverage under a policy of liability insurance — at least in terms of the obligation of the company to provide a defense to the claim — is determined based on the nature of the claim originally pled in the complaint. Sennett v. United States Fidelity and Guaranty Company, 757 So.2d 206 (¶ 18) (Miss.2000). In this case, the original cause of action clearly sounded in the tort of conversion. Nothing that has transpired since then has done anything to alter the underlying theory by which Waters has sought to recover either the trucks themselves or their value from the County.
¶ 16. Finding that a claim for conversion is the kind of claim covered under the general “wrongful acts” provisions of the policy, we conclude that the trial court was correct in holding that Genesis had an obligation to provide the county a defense in this case. By virtue of its refusal to do so, Genesis has breached its contract of insurance with the County and is, by virtue of that breach, liable for the reasonable costs of defending the claim, including the defense of this appeal. We, therefore, affirm the judgment of the trial court on this aspect of the case and remand for further proceedings to determine what amount ought to be awarded, taking into account, in addition to the proceedings before the trial court, the defense of this appeal.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. AS TO THE APPEAL OF GENESIS INDEMNITY INSURANCE COMPANY, THE MATTER IS REMANDED FOR A DETERMINATION OF THE REASONABLE COSTS INCURRED BY THE APPEL-LEE IN DEFENDING THE CLAIM OF WATERS TRUCK AND TRACTOR COMPANY, INC. IN ORDER THAT SUCH AMOUNT MAY BE REDUCED TO JUDGMENT IN FAVOR OF THE APPELLEE AND AGAINST GENESIS INDEMNITY INSURANCE COMPANY. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE TWO APPELLANTS, ONE HALF TO EACH.
KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.