WALLER, Chief Justice,
concurring in part and in result:
¶ 28. I agree with the majority that the State’s amended complaint satisfies the specificity requirements of Rule 9(b). I also agree that the trial court erred by not converting Bayer’s Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, but for different reasons. Conversion to summary judgment is not required every time a trial court considers documents attached to a Rule 12(b)(6) motion. Sennett v. U.S. Fid. & Guar. Co. [“USF & G”], 757 So.2d 206 (Miss.2000). In my view, Sennett is good law if the facts warrant. They do not here, however, because the trial court considered matters outside of both the pleadings and the attached documents — namely, the presettlement investigation. I would reverse and remand on those grounds; and therefore, I concur in part and in result.
¶ 29. In Sennett, this Court recognized an exception to the general rule that a Rule 12(b)(6) motion must be converted into a Rule 56 motion if the trial court considers matters outside the pleadings. Sennett, 757 So.2d at 209-10. In that case, the Sennetts’ complaint alleged that USF & G and Fidelity were obligated under the terms of “an insurance policy” to defend or indemnify the Sennetts against a wrongful-death suit. Id. at 208. USF & G and Fidelity filed a motion to dismiss and attached copies of two insurance policies to their motion. Id. The trial court considered the pleadings and the terms of the two policies in dismissing USF & G and Fidelity. Id. at 209. We held that conversion to summary judgment was unnecessary because: (1) the Sennetts’ complaint referred to the policies; (2) the policies were central and necessary to their cause of action; and (3) USF & G and Fidelity attached the entire policies to their motion to dismiss. Id. at 210 (quoting Sheppard v. Texas Dep’t of Transp., 158 F.R.D. 592, 596 (E.D.Tex.1994)).
¶ 30. Although the majority frames Sennett as an aberration within our longstanding jurisprudence, it is sound law where the facts warrant. The necessity of converting a Rule 12(b)(6) motion to a Rule 56 motion dissipates where a plaintiff has adequate, actual notice of all the information in the movant’s papers and relies on that information in framing the complaint. Sennett, 757 So.2d at 210 (citing Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991)). Sennett’s exception also is compatible with our rules of civil procedure. Rule 10(c) of the Missis *505 sippi Rules of Civil Procedure states that “[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.” Miss. R. Civ. P. 10(c). The federal counterpart to Mississippi’s Rule 10(c) is the basis for a bevy of federal courts[3] allowing consideration of documents attached to a Rule 12(b)(6) motion. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1827, at 443-44 (2004).
¶ 31. Admittedly, as pointed out by the majority, our recent decisions in Sullivan v. Tullos, 19 So.3d 1271 (Miss.2009), and Wilbourn v. Equitable Life Assurance Society, 998 So.2d 430 (Miss.2008), indicate that conversion to summary judgment is necessary where matters outside the pleading are considered. Yet, neither of those cases discussed Sennett or its implications. Sullivan, 19 So.3d 1271; Wilbourn, 998 So.2d 430.
¶ 32. Sennett ⅛ exception would apply in this case but for one important distinction. The State’s amended complaint referred to the 2001 Settlement Agreement. That Settlement Agreement was central and necessary to the State’s cause of action because it controlled which claims were actionable. Furthermore, Bayer attached the 2001 Settlement Agreement to its motion to dismiss. Had the trial court considered only the pleadings and the attached documents, which included the 2001 Settlement Agreement, conversion to summary judgment would not have been required. See Sennett, 757 So.2d at 209-10. But here, unlike Sennett, the trial court looked beyond the face of the pleadings and the attached documents by considering facts surrounding the presettlement investigation. See id. at 209.
¶ 33. As explained below, the comprehensiveness of the presettlement investigation formed the central basis for the trial court’s dismissal. In its Report, Recommendation and Order No. 2, the trial court stated it “trusted” that the presettlement investigation encompassed qui tam and non -qui tam drugs alike. It thus required the State to plead around that investigation in any later complaint. The State had to show that the investigation leading up to the 2001 Settlement Agreement was inadequate.
[T]he [2001] settlement was preceded by a broad based investigation of Bayer led by the federal government and joined by 47 states. Had concerns arisen about price reporting on products other than the six Qui Tam Drugs, we trust that those concerns would have been addressed in the course of the investigation and settlement. In any event, absent any specific allegation of wrongdoing as to Non-Qui Tam Drugs, we find no basis for the State’s claims relating to the pre-settlement period to proceed at this point. If at a later date the State has evidence the comprehensive investigation previously made against Bayer that resulted in the settlement should have included other drugs for the time 'prior to 2001, the State may bring a new action at that time.
(Emphasis added.)
¶ 34. In response to Report, Recommendation and Order No. 2, the State filed its first amended complaint, in which it attempted to distinguish the earlier, pre-settlement investigation. It alleged that particular investigation had “focused upon products and practices where spread and spread marketing techniques were more extreme or flagrant....” The State contended that the subject suit is broader: It *506 attacks an “industry practice” of introducing an Average Wholesale Price inflated by a minimum of seventeen percent.
¶ 35. The trial court found that the State had failed to state a claim for which relief could be granted. It maintained that “it is logical to assume” that concerns about non-Qro torn drugs would have been addressed in the course of the presettlement investigation. Consequently, it dismissed the case, concluding that the State had failed to make any specific allegation that the settlement and investigation leading up to it were inadequate.
¶ 36. The comprehensiveness of the presettlement investigation is a question of fact that is not apparent from the pleadings or the attached documentation. The trial court simply assumed its own facts about that investigation and required the State to plead around those assumptions. More importantly, the presettlement investigation ultimately is immaterial to whether the State has asserted a legally recognizable claim for relief. Even if the presettlement investigation encompassed every drug manufactured by Bayer, that alone would not bar a subsequent claim. The 2001 Settlement Agreement is the only document that precludes any later claims, and it releases only those claims concerning qui tam drugs. The presettlement investigation had no bearing at the 12(b)(6) stage.
¶ 37. The trial court’s consideration of the presettlement investigation necessitated conversion to summary judgment. I would reverse and remand on those grounds.
DICKINSON, J., JOINS THIS OPINION.

. Sennett, 757 So.2d at 209 n. 1; see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1327, at 443-47 (2004).