Charles Eugene (Gene) PHILLIPS and Barbara H. Phillips, Plaintiffs,

v.

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Fulton A. Jordan, Jr. d/b/a Jordan & Associates and William S. ("Buddy") Quinn, Jr., Defendants.

Civil Action No. 3:98CV348LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 3, 1998.

Richard Taylor Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, MS, for plaintiff.

Keith R. Raulston, John Chase Bryan, Watkins Ludlam Winter & Stennis, P.A., Jackson, MS, Robert E. Haubert, Jr., Baker, Donelson, Bearman & Caldwell, Jackson, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on motion of plaintiffs Charles Eugene Phillips and Barbara H. Phillips to remand pursuant to 28 U.S.C. § 1447(c).[1] Defendants New England Mutual Life Insurance Company (New England), Fulton A. Jordan, Jr. d/b/a Jordan and Associates (Jordan) and William S. "Buddy"

---

1. Also pending in this case is a motion by defendant New England to dismiss pursuant to Rule 12(b)(6). Because the court concludes herein that plaintiffs' motion to remand is well taken, the court lacks jurisdiction to consider the motion to dismiss.

Quinn, Jr. (Quinn) have responded in opposition. The court, having considered the memoranda and attachments of the parties, concludes that plaintiffs' motion is well taken and should be granted.

New England is an insurance company licensed to sell insurance in all fifty states, and is represented by over 2900 agents operating exclusively through over eighty general and managerial agencies. One of these agencies is Jordan, which is the exclusive broker for New England in Mississippi. At the time of the events giving rise to this action, Quinn was employed as an authorized sales agent for New England in Mississippi and was acting under the supervision of Jordan.

In 1982 and 1987, plaintiffs purchased what are commonly referred to as "vanishing premium" life insurance policies[2] from defendants. On April 1, 1998, after "learn[ing] that the policies would not perform as [allegedly] represented and illustrated," plaintiffs filed this action in state court alleging that defendants were liable for, among other things, fraudulent misrepresentation, fraudulent concealment and fraudulent inducement. Specifically, as summarized in their rebuttal brief related to this motion, plaintiffs contended that "New England sales illustrations and presentations were represented as based on 'current investment experience' when, in fact, they were based on inflated dividend assumptions, and artificial actuarial computations intentionally manipulated by the defendants to portray a more favorable 'vanish date.'"

New England timely removed the case to this court on the basis of diversity jurisdiction and the allegation that the nondiverse Mississippi defendants, Quinn and Jordan, had been fraudulently joined in the case. They asserted that joinder was fraudulent because (1) Quinn and Jordan, as agents of a disclosed principal, cannot be held personally liable for the acts alleged in the complaint,

(2) the plaintiffs have failed to show justifiable reliance to support their fraud claims and, alternatively, (3) any otherwise viable claims against Quinn and Jordan are barred by the statute of limitations. For the reasons that follow, this court disagrees with defendants' positions and will remand the case to state court.

As to the standards that this court should employ when deciding a claim of fraudulent joinder, it is well settled in this circuit that

[t]he burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981) (emphasis in original).[3] In addition, the Fifth Circuit has emphasized that the trial court need not "decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so." *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42–3 (5th Cir.1992). Finally, "[i]n evaluating fraudulent joinder claims, [the court] must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Id.*

Turning to defendants' contentions in the case at bar, they first argue that plaintiffs have failed to demonstrate that there is an independent cause of action allowing any possibility of recovering against Jordan or Quinn. In this regard, defendants correctly state the general rule of Mississippi law that agents for known principals incur no liability for a breach of a duty committed by the principal. *See McFarland v. Utica Fire*

---

**2.** Vanishing premium policies are paid dividends which in some instances can be sufficient to cause the premiums to "offset" whereby dividend values are used to pay the premium. In such an instance, the cash premium "vanishes" and is no longer due from the insured.

**3.** There are no allegations of fraud in the plaintiffs' pleading of "jurisdictional facts." All parties apparently agree that plaintiff, Jordan and Quinn are Mississippi residents. As such, in order to defeat plaintiffs' motion to remand, defendants must show that plaintiffs could not establish a cause of action against either Jordan or Quinn in state court.

*Ins. Co.,* 814 F.Supp. 518, 521 (S.D.Miss. 1992). However, an equally well accepted corollary rule is that agents *may* incur individual liability when their conduct constitutes "gross negligence, malice, or reckless disregard for the rights of the plaintiff." *Id.* (citing *Dunn v. State Farm Fire and Casualty Co.,* 711 F.Supp. 1359, 1361 (N.D.Miss. 1987)).

▮▮▮ Defendants, apparently aware of the corollary rule, assert that "there is not a single allegation in the Complaint or the Reply Brief[ ] ... that either Jordan or Quinn engaged in grossly negligent or intentionally tortious conduct which would impose tort liability on them." The court disagrees with defendants' reading of the complaint. With respect to Quinn alone,[4] the complaint alleges, *inter alia,* that

> [t]he actions of Defendant Quinn were designed to and did, in fact, conceal from Plaintiffs the deceptive acts and actuarial practices upon which the sales to Plaintiffs had been made.... The misrepresentations, omissions and concealment of material facts were intentional and deliberate, or were committed with reckless disregard for the rights of Plaintiffs, and were a part of a willful scheme, venture, and course of conduct through which Defendant Quinn sought to and did induce Plaintiffs to purchase the policies in question....

In addition, the plaintiffs' rebuttal brief asserts that

> "[p]erhaps most significant in this case was New England's adoption in 1983–84 of a new, highly interest-sensitive method of illustrating dividends—and the decision by its agents to conceal this fact from the Phillips.... New England's senior management and its agents were warned by New England's actuaries about the dangers inherent in its new illustrations. The defendants chose to conceal these facts from the plaintiffs both at the time of sale and thereafter."

While these are not the only accusations leveled directly against Quinn, these are clearly sufficient allegations · of intentional conduct by Quinn so as to render him potentially liable under Mississippi law. As such, even though Quinn may have been acting as an agent for a disclosed principal, this court cannot conclude from this fact alone that joining him as a defendant in this case was fraudulent.

Defendants next assert that the plaintiffs' "claims against the non-diverse Defendants are barred by the ... lack of justifiable reliance." In support of this position, defendants quote portions of Gene Phillips' deposition wherein he testified that in purchasing the policies, he relied on the fact that the premiums would vanish after a specified number of years. According to defendants, since "[p]laintiffs' claims are simple claims of fraud and misrepresentation," and since Gene Phillips apparently did not know and did not care about how the policies would be funded, plaintiffs have failed to show the "reliance" necessary to support a fraud claim.

▮▮▮ The court need not decide here whether or not plaintiffs can demonstrate the "reliance" necessary to state a traditional fraud claim. As already pointed out, at least one aspect of plaintiffs' case involves alleged fraudulent *concealment.* In this regard, Mississippi law provides that an omission or concealment of material facts can constitute a misrepresentation, *see Rankin v. Brokman,* 502 So.2d 644, 646 (Miss.1987), and in order to recover damages for fraudulent concealment, a plaintiff need only show that a defendant "took some action, affirmative in nature, which was designed or intended to prevent and which did prevent, the discovery of the facts giving rise to the fraud claim," *Davidson v. Rogers,* 431 So.2d 483, 485 (Miss.1983).

The facts before the court, including the allegations in the complaint which have been quoted above, indicate that plaintiffs have "some possibility" of satisfying the *Davidson* standard and recovering under a theory of fraudulent concealment in state court. Therefore, the court finds that defendants have not satisfied the "heavy" fraudulent joinder burden on this issue.

---

4. As already noted, the possibility of recovering against *either* Quinn or Jordan necessitates the remand of this case to state court.

Finally, defendants contend that joinder of the non-diverse defendants was fraudulent because the claims against these agents are barred by the statute of limitations. Plaintiffs argue in response that their claims are timely because the statute of limitations was tolled by the defendants' alleged fraudulent concealment.

It should first be noted that Mississippi's general statute of limitations applies to claims of fraud and misrepresentation. *See* Miss.Code Ann. § 15-1-49 (1972). Prior to July 1, 1989, all actions governed by the general statute were required to be commenced within six years after the cause of action accrued. After July 1, 1989, such actions were required to be commenced within three years after the cause of action accrued. Defendants argue that plaintiffs' claims are barred whether the six or three-year period is applicable.[5]

In support of their position, defendants correctly point out that the policies in question were issued by New England on December 15, 1982 and March 15, 1987 and that under Mississippi law, a cause of action for fraud or misrepresentation accrues upon completion of the sale induced by the false representations or upon consummation of the fraud or misrepresentation. *See Dunn v. Dent,* 169 Miss. 574, 153 So. 798 (Miss.1934). Since plaintiffs filed this action in April of 1998, defendants reason that the claims are time-barred. However, citing Miss.Code Ann. § 15-1-67 (1972), which tolls the statute of limitations in cases of fraudulent concealment, plaintiffs argue that defendants fraudulently concealed the actuarial manipulations and inflated dividend assumptions until at least November 1995, making their April 1998 complaint untimely.[6]

The parties dispute the application of the tolling provision on two primary grounds. First, defendants argue that plaintiffs failed to "plead specific facts alleging with particu-

larity" affirmative acts of concealment which prevented plaintiffs from discovering this cause of action. In this regard, defendants cite *Reich v. Jesco. Inc.,* 526 So.2d 550, 552 (Miss.1988), which held that "to establish fraudulent concealment, Plaintiff must show actions or conduct of an affirmative nature designed to prevent and which does prevent Plaintiff's discovery of a claim."

■ As an initial matter, the court notes that there is a question as to whether subsequent affirmative acts of concealment are required to toll the statute when, as in the case at bar, the underlying action itself is based on fraud. *See Texas v. Allan Constr. Co., Inc.,* 851 F.2d 1526, 1529 (5th Cir.1988) (applying federal law) ("[The] general rule [is] that in a fraud case, the plaintiff need only aver the underlying fraud in order to toll the statute of limitations until such time as the plaintiff had some notice of the wrong; fraud is, by its very nature, self-concealing"); *see also Bufalino v. Michigan Bell Tel. Co.,* 404 F.2d 1023, 1028 (6th Cir.1968) (applying Michigan law) ("[T]o toll the statute there must be affirmative acts.... Mere silence is not sufficient.... If, however, plaintiff's cause of action is based on fraud, a different rule would apply. The original fraud is regarded as a continuing affirmative act, and mere silence of the defendant is treated as a concealment.")

■ The Mississippi Supreme Court apparently has yet to say whether subsequent affirmative acts are required to fraudulently conceal an underlying fraud claim so as to toll the statute of limitation. If such affirmative conduct is *not* required, this alone would make it "possible" for plaintiffs' claims to be timely in state court. In any event, plaintiffs have alleged conduct on the part of defendants which could be construed by a state court as affirmative in nature. Specifically, the complaint alleges that the defendants

---

**5.** Because the court will conclude that plaintiffs' claims are timely under either the six or three-year time frame, the court need not address the issue of which limitations period actually governs.

**6.** Miss.Code Ann. § 15-1-67 (1972) provides:

If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been first known or discovered.

"participated and engaged in a deliberate course of individual and corporate conduct which concealed from Plaintiffs the nature and extent of the deceptive sales tactics used to sell the policies."[7] Moreover, plaintiffs point to Gene Phillips' testimony regarding his early 1996 conversation with Jordan in which Jordan allegedly assured plaintiff that the policies were still "valuable," doing "great" and certainly should not be canceled. Jordan failed, however, according to plaintiffs, "to disclose the actuarial manipulations which had, in fact, caused Phillips' policies to fail to perform."

In the court's view, even if affirmative conduct is required in this case to demonstrate fraudulent concealment, plaintiffs have alleged specific facts which, if proven, make it possible for a state court to toll the statute of limitations. Said another way, this court cannot say that it would be impossible for a state court to conclude that defendants took affirmative steps to fraudulently conceal plaintiffs' cause of action. As such, this aspect of defendants' statute of limitations argument does not warrant a finding of fraudulent joinder.

Defendants also challenge plaintiffs' reliance on § 15-1-49 by arguing that, even if there was fraudulent concealment, "with reasonable diligence," this cause of action "might" have been discovered at a time which makes the April 1998 complaint untimely nonetheless. In this respect, they argue that "the only question ... for the court to answer is were Plaintiffs provided with sufficient information at the time they purchased their policies to put them on notice that the premiums were not guaranteed to vanish."[8] The court must disagree with defendants' characterization of the issue. In fact, whether plaintiffs were on notice that the premiums were "not guaranteed to van-

ish" is not the question at all. Rather, the inquiry is whether the plaintiffs were on notice of the alleged "inflated dividend assumptions," and "artificial actuarial computations." The court cannot say that a state court would necessarily answer this question in the affirmative and, as such, defendants' fraudulent joinder claim on this ground must fail.

Based on the foregoing, the court concludes that defendants have failed to show that plaintiffs have no possibility of establishing a cause of action against the nondiverse defendants in state court.[9] For this reason, plaintiffs' motion is granted, and the case remanded to state court for further proceedings.

---

7. In their rebuttal brief, plaintiffs cite deposition testimonies of New Englands' corporate management and assert that in 1983–84 defendants began a "new, highly interest-sensitive method of illustrating dividends" but, through its agents, "intentionally concealed these facts from plaintiffs."

8. Specifically, defendants assert that plaintiffs were provided with "sufficient," "unambiguous" information at the time they purchased their

policies to put them on notice that the premiums "were not guaranteed to vanish."

9. It is important to emphasize again that this court is offering no opinion on whether these plaintiffs will actually, or even probably, prevail on the merits of their claims against Quinn and Jordan. The court merely holds that there is indeed a possibility that they may do so under Mississippi law. *See Dodson*, 951 F.2d at 42.