998 So.2d 439 (2007)
Jane M. WILBOURN, as Trustee of the James G. Wilbourn Irrevocable Trust, Appellant
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES and William J. Byrd, Appellees.
No. 2005-CA-02244-COA.
Court of Appeals of Mississippi.
August 7, 2007.
Rehearing Denied April 15, 2008.
*440 Richard E. Wilbourn, III, attorney for appellant.
W. Wayne Drinkwater, Jr., Stephen L. Thomas, Margaret Oertling Cupples, Jeffrey R. Blackwood, J. Alex Purvis, Danielle Daigle Ireland, William Larry Lantham, G. Todd Burwell, W. Jeffrey Collier, attorneys for appellees.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. The Appellant, Jane M. Wilbourn, as Trustee of the James G. Wilbourn Irrevocable Trust (the "Trust"), brings this appeal from the judgment of the Quitman County Circuit Court dismissing the Trust's complaint against Equitable Life Assurance Society of the United States, and its agent William J. Byrd, pursuant to the statute of limitations. The complaint, filed on May 17, 2004, contained twenty-five counts and alleged various torts including conspiracy, fraudulent concealment, fraudulent inducement, and breach of duty of good faith and fair dealing. Each count is based on or arises out of alleged fraudulent concealment and oral misrepresentations of Equitable Life, through its agent Byrd, regarding alleged "vanishing premiums" on a life insurance policy issued to the Trust in 1986. Several issues are raised by the parties on appeal. However, we find the statute of limitations issue to be dispositive, and we will address only whether the circuit court properly dismissed the Trust's complaint.

PROCEDURAL HISTORY AND STATEMENT OF THE FACTS
¶ 2. On August 7, 1986, the Trust purchased a $1,000,000 whole-life insurance policy from Equitable Life Assurance Agent William J. Byrd. The policy in dispute was to insure the life of James G. Wilbourn. The Trust alleges that Byrd orally represented that the $14,300 annual *441 premium payments would "vanish" after eight out-of-pocket payments and that the policy would become self-supporting such that the future premiums would be paid from the policy proceeds. The written terms of the policy provide that the premiums were payable annually for the life of the insured and that the policy participates in dividends. The Trust's 1986 policy provided the following specific schedule of payments:

 BENEFITS AND PREMIUMS
 ANNUAL PREMIUM
 BENEFITS PREMIUM PERIOD
LIFE INSURANCE $14,300.00 FOR LIFE
PAID-UP
ADDITIONS $14,300.00 INITIAL
 NONE THEREAFTER

THE FIRST PREMIUM IS $28,600.00 AND IS DUE ON OR BEFORE DELIVERY OF THE POLICY. SUBSEQUENT PREMIUMS ARE DUE ON AUG. 9, 1987 AND EVERY 12 MONTHS THEREAFTER DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.
¶ 3. Further, the policy contained an integration clause which stated that the policy and the application constituted the total contract and prohibited any oral modification or waiver of the policy terms. The "Other Important Provisions" section of the 1986 policy specifically stated:
YOUR CONTRACT WITH US. We will provide the insurance described in this contract in consideration of payment of the required premiums.
This policy, and the attached copy of the application for this policy, make up the entire contract.
Only our President or one of our Vice Presidents can modify this contract to waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.
¶ 4. At the time of purchase, the Trust paid two premiums, totaling $28,600, and continued to pay $14,300 every August for the next six years. By July 1993, eight premium payments had been made. However, on July 23, 1993, the Trust received a notice from Equitable Life for another premium payment due. The Trust alleges that it paid this premium only after being assured by Byrd that it would be the last. Byrd explained to the Trust representative that the policy as an investment had not performed as well as projected and that one more payment would be needed in order to have the premiums "vanish." On July 27, 1994, the Trust again received a notice for another premium payment due. This time the Trust made the payment and then called Byrd. Byrd allegedly stated that the premiums were being paid from the policy proceeds and promised that, upon a written request for refund, the 1994 premium payment would be refunded. On September 13, 1994, the Trust received a refund check from Equitable Life. The Trust received yet another notice of payment due on July 14, 1995. Again, the Trust paid the premium and contacted Byrd. Byrd reiterated that the premiums were being paid from the policy proceeds, but this time he added that future notices of payment due should be ignored. The Trust received a second refund check from Equitable Life on August 31, 1995.
¶ 5. Both in 1996 and in 1997, the Trust received notices of premium payments from Equitable Life. However, the notices were ignored based on the alleged advice of Byrd. The Trust asserts that it stopped receiving notices of payment due after 1997 and until August 9, 2002 when the Trust received a statement from Equitable Life instructing the Trust to remit payment for past due premiums or have the *442 policy lapse. From 1994 to the receipt of the 2002 notice of lapse, the Trust assumed that the policy premiums were being paid out of the policy proceeds.
¶ 6. On May 17, 2004, the Trust filed its complaint with the Quitman County Circuit Court in which it alleged various torts arising out of the fraudulent concealment and misrepresentations of Byrd regarding the "vanishing premiums" of the policy. After the case was removed to federal court, and then remanded back to the Quitman County Circuit Court, Equitable Life filed a motion to dismiss with prejudice, pursuant to Mississippi Rules of Civil Procedure 9(b) and 12(b)(6). Byrd joined Equitable Life's motion, in which they argued that the complaint was barred by the statute of limitations. A hearing was held on the motion to dismiss, and on November 3, 2005, the circuit court granted the appellee's motion to dismiss with prejudice, finding that the policy clearly stated that the premiums were payable for "life," that the time for filing any claim arising out of the alleged misrepresentation began to run on the date of delivery of the policy in 1986, and that because the complaint was filed outside the statute of limitations period, it is time-barred. From this ruling, the Trust appeals to this Court for review on the following issue:
WHETHER THE CIRCUIT COURT ERRED BY DISMISSING THE COMPLAINT PURSUANT TO THE STATUTE OF LIMITATIONS?

DISCUSSION
¶ 7. We review de novo the grant or denial of a motion to dismiss for failure to state a claim. Ralph Walker, Inc. v. Gallagher, 926 So.2d 890, 893 (¶ 3) (Miss. 2006). The applicable statute of limitations for this cause of action is found in Mississippi Code Annotated section 15-1-49 (Rev.2003), which imposes a three-year statute of limitations. However, for claims that accrued prior to July 1,1989, the statute imposed a six-year statute of limitations. The parties in this case do not dispute that section 15-1-49 contains the applicable statute of limitations. Rather, the parties differ on when the cause of action accrued, and therefore, when the statute of limitations began to run.
¶ 8. The Trust contends that Byrd's fraudulent concealment of the "vanishing premiums" operated to toll the statute of limitations so that the period did not begin to run until receipt of the notice of lapse in 2002. Further, the Trust asserts that enough evidence of fraudulent concealment was placed before the circuit court to survive a Rule 12(b)(6) motion to dismiss. The Trust, therefore, submits that the circuit court committed reversible error by dismissing the complaint as barred by the statute of limitations. Equitable Life and Byrd argue that no action for fraudulent concealment can be sustained because the express terms of the contract both prohibit and contradict the alleged oral modifications. Equitable Life and Byrd also argue that the express contract language negates any claim of an overt act or conduct on the part of the insurer to prevent the Trust from discovering the actual terms of the contract. Further, Equitable Life asserts that the contract specifically prohibited the kind of oral modifications alleged by the Trust, and that the Trust is imputed with the knowledge of the terms and provisions of the written contract. Finally, Equitable Life and Byrd assert that the statute of limitations began to run when the policy was sold and delivered in 1986, and it expired in 1992. Since the complaint was not filled until May 2004, Equitable Life and Byrd assert that the claims are time-barred and that the judgment of the circuit court should be affirmed.
*443 ¶ 9. For guidance on this issue, we look to our supreme court's opinion in Stephens v. Equitable Life Assur. Soc'y of the United States, 850 So.2d 78 (Miss.2003). The facts and issues presented in Stephens are almost identical to those presented here. In Stephens, the trial court dismissed the complaint as time-barred. The plaintiffs' contracts for life insurance had been entered into in June of 1972, but their complaint was not filed until November 2001. Stephens, 850 So.2d at 78, 81 (¶¶ 4, 6). On appeal, the plaintiffs/appellants argued, as the Trust does here, that the fraudulent concealment of "vanishing premiums" based on the oral misrepresentations of an Equitable Life agent served to toll the statute of limitations. The supreme court recognized that "fraudulent concealment of a cause of action tolls the statute of limitations," see Myers v. Guardian Life Ins. Co. of America, Inc., 5 F.Supp.2d 423, 431 (N.D.Miss.1998), but held that in order to establish a claim of fraudulent concealment "the plaintiffs have a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done to prevent discovery of a claim, and (2) due diligence was performed on their part to discover the claim." Stephens, 850 So.2d at 83 (¶ 18). Further, the supreme court recognized regarding fraudulent concealment that "the purchaser's right of action for [fraudulent concealment] accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud(4)27" Dunn v. Dent, 169 Miss. 574, 577, 153 So. 798, 798 (1934). The supreme court also acknowledged that "[t]he cause of action for fraudulent concealment accrues when the person, with reasonable diligence, first knew or first should have known of the fraud." Stephens, 850 So.2d at 81 (¶ 9) (citing Miss.Code Ann. § 15-1-67).
¶ 10. In Stephens, our supreme court also held that the plain language of the contract contradicted the allegations of misrepresentation and that "knowledge of [the policy's] contents would be imputed to [the insured] as a matter of law." Stephens, 850 So.2d at 82 (¶ 13) (quoting Cherry v. Anthony, 501 So.2d 416, 419 (Miss.1987)).[1] Since the Stephenses and Palmer had the written insurance policy, the supreme court held that "[t]here was no affirmative act to prevent discovery, the terms were written into the policy." Stephens, 850 So.2d at 82 (¶ 20). The supreme court held that, in accordance with Dunn, the Stephenses and Palmer, at the very least, were put on notice of possible fraud and the statute of limitations began to run in 1992 when the Stephens and Palmer were required to pay additional premiums beyond those allegedly promised by the agent. Id. at 81 (¶ 9). Finally, the supreme court held that whether the statute began to run at the inception of the contract for insurance or at the time additional premiums became due, more than three years had passed and the claim was time-barred. Id.
¶ 11. In the case at bar, the Trust attempts the same argument for the tolling of the statute of limitations made by the appellants in Stephens. The Trust attempts to distinguish this case from Stephens by arguing that it took affirmative action to try and discover the misrepresentations of Byrd by inquiring about the additional premium payments due in 1993, 1994, and 1995. In Stephens, the Stephenses and Palmer made no such inquiries before filing suit. The Trust argues that Byrd and Equitable Life continued to *444 fraudulently conceal the fact that the premiums were not "vanishing" as promised even after the Trust inquired about the additional premiums and that such action tolls the running of the statute of limitations.
¶ 12. In settling this issue, we first look to the express terms of the written contract. The contract is clear and unambiguous on at least three points. First, the "Premiums and Benefits" section states that the premiums are due annually "FOR LIFE." Second, the "Other Important Provisions" section clearly states that the written policy statement is the entire contract. Third, only the President or one of the Vice Presidents of Equitable Life had the power to modify the contract and such modification was required to be in a signed writing. Other undisputed facts include: (1) the Trust received a copy of the policy at the time of its purchase, (2) the terms listed above were included in the policy provided to the Trust, (3) the Trust had a ten day period in which to examine the policy and could cancel the policy for a full refund if not satisfied for any reason, (4) the Trust is imputed with the knowledge of the contract terms, see Id. at 83 (¶15) (citing Cherry, 501 So.2d at 419), (5) the Trust has paid more that eight payments, and (6) the policy is still in effect and the Trust's beneficiary is entitled to the proceeds should the life of James G. Wilbourn come to an end.
¶ 13. Next, we must consider the test which the Trust must pass if the statute of limitations is to be tolled. The Trust must demonstrate "that (1) some affirmative act or conduct was done to prevent discovery of a claim, and (2) due diligence was performed on [its] part to discover the claim." Id. at 83 (¶ 18). Our supreme court held in Stephens that where a plaintiff has the written insurance policy in hand, and the policy is unambiguous and clearly states the terms of payment, there can be no affirmative act to prevent discovery. Id. at 83 (¶ 20). Here, it is undisputed that the Trust had the policy in hand, and we find that the payment terms of the contract unambiguously state that premiums are due annually for life. Therefore, the Trust has failed to satisfy the first prong of the supreme court's test for tolling the statute of limitations, and we do not reach the second prong until the first is met.
¶ 14. Finally, the most important rule enunciated in Stephens is that where the insured claims that the agent made oral promises that the premiums would "vanish" after a certain number of payments or at a future date, and additional premiums become due after the promised number of payments have been made or the future date has passed, the insured is on notice of a possible misrepresentation, has a duty to inquire, and the statute of limitations begins to run. Id. at 82 (¶ 9) (citing Peters v. Metropolitan Life, 164 F.Supp.2d 830, 837 (S.D.Miss.2001). Here, it is undisputed that the Trust was required to make an additional premium payment beyond the eight allegedly promised by Byrd in July 1993. Assuming that everything that the Trust claims is true, the Trust, in accordance with Stephens, was put on notice of a possible misrepresentation in 1993. "The cause of action for fraudulent concealment accrues when the person, with reasonable diligence, first knew or first should have known of the fraud." Id. at 81 (¶ 9) (quoting Miss.Code Ann. § 15-1-67)). Therefore, the statute, at the very least, began to run in 1993, and it expired in 1996. However, the Stephens opinion would also support a holding that because the written contract contained the express terms of payment, the cause of action accrued when the policy was delivered in 1986, and the statute ran in 1992. *445 However, whether the cause of action accrued in 1986 or in 1993 is inconsequential to our decision in this case. The Trust did not file its complaint until May 2004. Thus, whether the statute began to run in 1986 and expired in 1992 or began to run in 1993 and expired in 1996, the action is time-barred. Accordingly, the judgment of the circuit court dismissing the complaint under Mississippi Rule of Civil Procedure 12(b)(6) is affirmed.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., LEE, P.J. AND IRVING, J. ROBERTS, J., NOT PARTICIPATING.
CHANDLER, J., Dissenting:
¶ 16. I respectfully dissent. I believe the majority errs by affirming the lower court's dismissal of this case because the authenticity of the insurance contract is seriously placed into question by Equitable's inclusion of two insurance applications along with the policy in the motion to dismiss. The policy's integration clause states that "this policy, and the attached copy of the application for this policy, make up the entire contract." The presence of multiple applications makes it impossible for any court to determine which of the applications constitutes the insurance contract. Equitable has failed to make an adequate showing of the actual contract terms to support a Rule 12(b)(6) dismissal. Therefore, I would reverse and remand for this case to proceed through discovery during which the entirety of the insurance contract could be brought to light.
¶ 17. Rule 10(c) of the Mississippi Rules of Civil Procedure states that a copy of a written instrument which is an exhibit to a pleading is a part of the pleading for all purposes. According to Rule 10(d), when a defense is founded upon a written instrument, a copy of the written instrument "should be attached or filed with the pleading unless sufficient justification for its omission is stated in the pleadings." In this case, the Trust stated in its complaint that its claims arose from Equitable's sale of life insurance policy number 86408898 to the Trust. The Trust did not attach the policy to its complaint.
¶ 18. In Equitable's motion to dismiss, Equitable alleged that the policy language contradicted the oral misrepresentations made by its agent, Byrd. In support of its arguments, Equitable attached an affidavit of Hazel Lusk, the Division Manager of Customer Relations of its National Operations Center. Lusk stated that a true and correct copy of policy number 86408898 issued to the Trust, including an application for insurance signed by Wilbourn, was attached as Exhibit A. Exhibit A indeed contained whole life policy number 86408898 insuring Wilbourn's life for one million dollars. However, it also included two applications for a one-million dollar whole life insurance policy on Wilbourn. The first application was executed on July 14, 1986, and included Wilbourn's signature as the insured but no purchaser's signature. The second application was executed on August 7, 1986, and included the signatures of Wilbourn as the insured and of his wife, Jane Wilbourn, as the purchaser. The terms of the first and second applications differed as to which of Wilbourn's extant insurance policies the new Equitable policy would be replacing. The first application stated the applied-for insurance would replace "the above listed *446 policies," including a $10,000 whole life policy with Philadelphia Life, a $25,000 policy with Massachusetts Mutual, a $30,000 policy with College Life, a $5,000 policy with National Old Life, a $500,000 adjustable life policy with General American, and a $150,000 whole life policy with Equitable. The second application listed the same extant policies but stated that the applied-for insurance would replace "all of the above EXCEPT Massachusetts Mutual & Equitable policies, which will not be terminated."
¶ 19. The procedural law governing insurance contracts attached to an insurer's Rule 12(b)(6) motion to dismiss was developed in Sennett v. U.S. Fidelity and Guaranty Co., 757 So.2d 206, 209-210 (¶¶ 7-11) (Miss.2000). The Sennett court considered as part of the pleadings an insurance contract attached to the defendant's motion to dismiss for failure to state a claim. Id. at 210 (¶ 11). Importing federal law, the court held that the attachment of the contract did not convert the motion to dismiss into one for summary judgment because the contract was specifically referred to by the plaintiff's complaint, the document was central and necessary to the complaint, and the defendant "tendered the entire document" which directly refuted the plaintiff's assertions. Id. (citing Sheppard v. Texas Dep't of Transp., 158 F.R.D. 592, 596 (E.D.Tex.1994)).
¶ 20. In this case, it is clear that an insurance contract was central and necessary to the Trust's complaint. What is far from clear is whether the documents attached to Equitable's 12(b)(6) motion constituted that insurance contract. Due to the attachment of multiple applications, the requisite certainty that Equitable tendered the actual, entire insurance contract is absent. "[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir.2006). The question of whether or not the documents purporting to be the Trust's insurance contract with Equitable actually constitute that contract cannot be answered without reference to information outside of the pleadings. Therefore, the documents cannot afford a basis for a Rule 12(b)(6) dismissal. For this reason, I would reverse and remand for this case to proceed through discovery.
¶ 21. Though I would reverse and remand this case on the above issue alone, I briefly discuss what I believe to be flaws in the majority's analysis. The majority's selective quotation of the policy language obscures the complexity of the statute of limitations issue. The majority holds that, because the policy stated that premiums were payable for life, Byrd's misrepresentation that the premiums would vanish contradicts the policy language such that the Trust was placed on notice of the fraudulent misrepresentation in 1986. But regarding premiums, the policy actually states, "Premiums are payable for life. Policy participates in dividends." As acknowledged by counsel for Equitable at oral argument in this case, further policy language provided that the dividends could supply the premium payments. Thus, the policy actually provided for "vanishing premiums," a mechanism by which, after a certain period of time, the policy will accumulate value sufficient to pay the premiums due. Gregory v. Central Security Life Ins. Co., 953 So.2d 233, 235 (¶ 2) (Miss.2007). Equitable's counsel also acknowledged that under the terms of the policy, the policy could have performed exactly as misrepresented by Byrd, with the premiums vanishing in eight years.
¶ 22. Mississippi law provides that a person has an obligation to read a contract *447 before signing it and cannot as a general rule complain of an "oral misrepresentation the error of which would have been disclosed by reading the contract." Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., 584 So.2d 1254, 1257 (Miss.1991). "Purchasers of insurance policies cannot, as a matter of law, state a cause of action based on alleged misrepresentations that are in conflict with the plain terms of the insurance policy." Hignite v. American General Life & Accident Ins. Co., 142 F.Supp.2d 785, 791 (N.D.Miss.2001). Because the insurance contract provided that premiums were payable with dividends and could "vanish," Byrd's misrepresentations based on sales materials and policy projections about when the premiums would vanish would not have been apparent from reading and understanding the plain terms of the contract. Therefore, this case is distinguishable from Stephens, in which the agent allegedly represented that the policy would be "fully paid" in a certain time. Stephens v. The Equitable Life Assurance Society of the U.S., 850 So.2d 78, 79 (¶ 4), 80 (¶ 5) (Miss.2003). Unlike Stephens, the representation here concerned how, not whether, further premiums were to be paid. The falsity of that representation would not have been apparent from reading the insurance contract which in fact provided that premiums could be paid from the policy proceeds.
¶ 23. Equitable argues that, because the insurance contract does not guarantee that the premiums would vanish in eight years, the Trust was sufficiently placed on notice of Byrd's misrepresentations by the policy language. In Phillips v. New England Mutual Life Insurance Co., 36 F.Supp.2d 345, 350 (S.D.Miss.1998), the court rejected this argument, stating
The court must disagree with defendant's characterization of the issue. In fact, whether plaintiffs were on notice that the premiums were "not guaranteed to vanish" is not the question at all. Rather, the inquiry is whether the plaintiffs were on notice of the alleged "inflated dividend assumptions," and "artificial actuarial computations."
Just as the plaintiffs in Phillips, the Trust alleged in its complaint that it was fraudulently induced to buy the policy because it did so in reliance upon the inflated dividend assumptions and artificial actuarial computations promulgated by Byrd and Equitable. In my opinion, the plain terms of the policy, which in fact permitted vanishing premiums, did not disclose the error of Byrd's misrepresentations about how the vanishing premium feature would operate.
¶ 24. Moreover, I believe the majority errs in its alternative holding that the statute of limitations began to run in 1993. I believe the Trust established through fraudulent concealment that the statute of limitations was tolled until 2002, when the Trust received notice that the premiums had not vanished as promised. To establish fraudulent concealment under section 15-1-67, the plaintiff must demonstrate that "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." Stephens, 850 So.2d at 84 (¶ 18). In Stephens, the two sets of plaintiffs continued paying monthly premiums for nine years and six years, respectively, after the dates on which the agent had represented the premiums were to have vanished. Id. at 85 (¶ 25). The court held that the statute of limitations began to run as to each plaintiff on the date the premiums were supposed to have vanished but did not, because it was on that date that the plaintiff should have known of the fraud. Id. The court distinguished the case from Phillips, in which the plaintiffs had filed suit within three years of learning of the actuarial manipulations and inflated dividend assumptions. Id.
*448 ¶ 25. Relying on Stephens, the majority holds that the Trust failed to exercise due diligence to discover its claims against Equitable and Byrd because, after being told by Byrd in 1993 that only one more premium was due, the Trust paid the premium and made no further inquiry into whether it had been defrauded. I disagree with this reasoning. Byrd's promise that the policy's performance was such that the premiums would vanish in eight years was not substantially contradicted by Equitable's requirement of a single, final, out-of-pocket premium payment. After that single extra premium payment, no further payments were required until 2002. Thus, between 1993 and 2002, a reasonable person in the position of the Trust would have believed that the premiums had vanished and had vanished in the substantial amount of time that Byrd had represented in 1986. I would not find that the Trust was placed on notice of its claims by Equitable's requirement of a single extra premium payment in 1993 because that requirement did not substantially contradict Byrd's initial misrepresentations about policy performance. The first actual notice the Trust received that the premiums had not vanished substantially as promised by Byrd came in 2002, when Equitable billed the Trust for past due premiums. It was only at that point that it became manifest that a much greater cash outlay than originally contemplated by the Trust would be required to continue the policy. I would find that the statute of limitations began running when the Trust was billed in 2002 and, therefore, that this action was timely commenced.
KING, C.J., LEE, P.J. AND IRVING, J., JOIN THIS OPINION.
NOTES
[1] Milton and Helen S. Stephens and Henry Palmer, the plaintiffs, bought an Equitable Life Assurance life insurance policy from agent George C. Bell. Stephens, 850 So.2d at 79 (¶ 2).