CHANDLER, J.,
Dissenting:
¶ 16. I respectfully dissent. I believe the majority errs by affirming the lower court’s dismissal of this case because the authenticity of the insurance contract is seriously placed into question by Equitable’s inclusion of two insurance applications along with the policy in the motion to dismiss. The policy’s integration clause states that “this policy, and the attached copy of the application for this policy, make up the entire contract.” The presence of multiple applications makes it impossible for any court to determine which of the applications constitutes the insurance contract. Equitable has failed to make an adequate showing of the actual contract terms to support a Rule 12(b)(6) dismissal. Therefore, I would reverse and remand for this case to proceed through discovery during which the entirety of the insurance contract could be brought to light.
¶ 17. Rule 10(c) of the Mississippi Rules of Civil Procedure states that a copy of a written instrument which is an exhibit to a pleading is a part of the pleading for all purposes. According to Rule 10(d), when a defense is founded upon a written instrument, a copy of the written instrument “should be attached or filed with the pleading unless sufficient justification for its omission is stated in the pleadings.” In this case, the Trust stated in its complaint that its claims arose from Equitable’s sale of life insurance policy number 86408898 to the Trust. The Trust did not attach the policy to its complaint.
¶ 18. In Equitable’s motion to dismiss, Equitable alleged that the policy language contradicted the oral misrepresentations made by its agent, Byrd. In support of its arguments, Equitable attached an affidavit of Hazel Lusk, the Division Manager of Customer Relations of its National Operations Center. Lusk stated that a true and correct copy of policy number 86408898 issued to the Trust, including an application for insurance signed by Wilbourn, was attached as Exhibit A. Exhibit A indeed contained whole life policy number 86408898 insuring Wilbourn’s life for one million dollars. However, it also included two applications for a one-million dollar whole life insurance policy on Wilbourn. The first application was executed on July 14, 1986, and included Wilbourn’s signature as the insured but no purchaser’s signature. The second application was executed on August 7, 1986, and included the signatures of Wilbourn as the insured and of his wife, Jane Wilbourn, as the purchaser. The terms of the first and second applications differed as to which of Wilb-ourn’s extant insurance policies the new Equitable policy would be replacing. The first application stated the applied-for insurance would replace “the above listed *446 policies,” including a $10,000 whole life policy with Philadelphia Life, a $25,000 policy with Massachusetts Mutual, a $30,000 policy with College Life, a $5,000 policy with National Old Life, a $500,000 adjustable life policy with General American, and a $150,000 whole life policy with Equitable. The second application listed the same extant policies but stated that the applied-for insurance would replace “all of the above EXCEPT Massachusetts Mutual & Equitable policies, which will not be terminated.”
¶ 19. The procedural law governing insurance contracts attached to an insurer’s Rule 12(b)(6) motion to dismiss was developed in Sennett v. U.S. Fidelity and Guaranty Co., 757 So.2d 206, 209-210 (¶¶ 7-11) (Miss.2000). The Sennett court considered as part of the pleadings an insurance contract attached to the defendant’s motion to dismiss for failure to state a claim. Id. at 210 (¶ 11). Importing federal law, the court held that the attachment of the contract did not convert the motion to dismiss into one for summary judgment because the contract was specifically referred to by the plaintiffs complaint, the document was central and necessary to the complaint, and the defendant “tendered the entire document” which directly refuted the plaintiffs assertions. Id. (citing Sheppard v. Texas Dep't of Transp., 158 F.R.D. 592, 596 (E.D.Tex.1994)).
¶ 20. In this case, it is clear that an insurance contract was central and necessary to the Trust’s complaint. What is far from clear is whether the documents attached to Equitable’s 12(b)(6) motion constituted that insurance contract. Due to the attachment of multiple applications, the requisite certainty that Equitable tendered the actual, entire insurance contract is absent. “[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is “integral” to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.” Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir.2006). The question of whether or not the documents purporting to be the Trust’s insurance contract with Equitable actually constitute that contract cannot be answered without reference to information outside of the pleadings. Therefore, the documents cannot afford a basis for a Rule 12(b)(6) dismissal. For this reason, I would reverse and remand for this case to proceed through discovery.
¶21. Though I would reverse and remand this case on the above issue alone, I briefly discuss what I believe to be flaws in the majority’s analysis. The majority’s selective quotation of the policy language obscures the complexity of the statute of limitations issue. The majority holds that, because the policy stated that premiums were payable for life, Byrd’s misrepresentation that the premiums would vanish contradicts the policy language such that the Trust was placed on notice of the fraudulent misrepresentation in 1986. But regarding premiums, the policy actually states, “Premiums are payable for life. Policy participates in dividends.” As acknowledged by counsel for Equitable at oral argument in this case, further policy language provided that the dividends could supply the premium payments. Thus, the policy actually provided for “vanishing premiums,” a mechanism by which, after a certain period of time, the policy will accumulate value sufficient to pay the premiums due. Gregory v. Central Security Life Ins. Co., 953 So.2d 233, 235 (¶ 2) (Miss.2007). Equitable’s counsel also acknowledged that under the terms of the policy, the policy could have performed exactly as misrepresented by Byrd, with the premiums vanishing in eight years.
¶22. Mississippi law provides that a person has an obligation to read a contract *447 before signing it and cannot as a general rule complain of an “oral misrepresentation the error of which would have been disclosed by reading the contract.” Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., 584 So.2d 1254, 1257 (Miss.1991). “Purchasers of insurance policies cannot, as a matter of law, state a cause of action based on alleged misrepresentations that are in conflict with the plain terms of the insurance policy.” Hignite v. American General Life & Accident Ins. Co., 142 F.Supp.2d 785, 791 (N.D.Miss.2001). Because the insurance contract provided that premiums were payable with dividends and could “vanish,” Byrd’s misrepresentations based on sales materials and policy projections about when the premiums would vanish would not have been apparent from reading and understanding the plain terms of the contract. Therefore, this case is distinguishable from Stephens, in which the agent allegedly represented that the policy would be “fully paid” in a certain time. Stephens v. The Equitable Life Assurance Society of the U.S., 850 So.2d 78, 79 (¶4), 80 (¶ 5) (Miss.2003). Unlike Stephens, the representation here concerned how, not whether, further premiums were to be paid. The falsity of that representation would not have been apparent from reading the insurance contract which in fact provided that premiums could be paid from the policy proceeds.
¶ 28. Equitable argues that, because the insurance contract does not guarantee that the premiums would vanish in eight years, the Trust was sufficiently placed on notice of Byrd’s misrepresentations by the policy language. In Phillips v. New England Mutual Life Insurance Co., 36 F.Supp.2d 345, 350 (S.D.Miss.1998), the court rejected this argument, stating
The court must disagree with defendant’s characterization of the issue. In fact, whether plaintiffs were on notice that the premiums were “not guaranteed to vanish” is not the question at all. Rather, the inquiry is whether the plaintiffs were on notice of the alleged “inflated dividend assumptions,” and “artificial actuarial computations.”
Just as the plaintiffs in Phillips, the Trust alleged in its complaint that it was fraudulently induced to buy the policy because it did so in reliance upon the inflated dividend assumptions and artificial actuarial computations promulgated by Byrd and Equitable. In my opinion, the plain terms of the policy, which in fact permitted vanishing premiums, did not disclose the error of Byrd’s misrepresentations about how the vanishing premium feature would operate.
¶ 24. Moreover, I believe the majority errs in its alternative holding that the statute of limitations began to run in 1993. I believe the Trust established through fraudulent concealment that the statute of limitations was tolled until 2002, when the Trust received notice that the premiums had not vanished as promised. To establish fraudulent concealment under section 15-1-67, the plaintiff must demonstrate that “(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it.” Stephens, 850 So.2d at 84 (¶ 18). In Stephens, the two sets of plaintiffs continued paying monthly premiums for nine years and six years, respectively, after the dates on which the agent had represented the premiums were to have vanished. Id. at 85 (¶ 25). The court held that the statute of limitations began to run as to each plaintiff on the date the premiums were supposed to have vanished but did not, because it was on that date that the plaintiff should have known of the fraud. Id. The court distinguished the case from Phillips, in which the plaintiffs had filed suit within three years of learning of the actuarial manipulations and inflated dividend assumptions. Id.
*448 ¶ 25. Relying on Stephens, the majority holds that the Trust failed to exercise due diligence to discover its claims against Equitable and Byrd because, after being told by Byrd in 1993 that only one more premium was due, the Trust paid the premium and made no further inquiry into whether it had been defrauded. I disagree with this reasoning. Byrd’s promise that the policy’s performance was such that the premiums would vanish in eight years was not substantially contradicted by Equitable’s requirement of a single, final, out-of-pocket premium payment. After that single extra premium payment, no further payments were required until 2002. Thus, between 1993 and 2002, a reasonable person in the position of the Trust would have believed that the premiums had vanished and had vanished in the substantial amount of time that Byrd had represented in 1986. I would not find that the Trust was placed on notice of its claims by Equitable’s requirement of a single extra premium payment in 1993 because that requirement did not substantially contradict Byrd’s initial misrepresentations about policy performance. The first actual notice the Trust received that the premiums had not vanished substantially as promised by Byrd came in 2002, when Equitable billed the Trust for past due premiums. It was only at that point that it became manifest that a much greater cash outlay than originally contemplated by the Trust would be required to continue the policy. I would find that the statute of limitations began running when the Trust was billed in 2002 and, therefore, that this action was timely commenced.
KING, C.J., LEE, P.J. AND IRVING, J., JOIN THIS OPINION.